**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **BROOKLYN BECC HUBER-BROWN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-12951** |
| **FREDERICK BOUTTE, WARDEN** | **SECTION "I"(4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. ***See* 28 U.S.C. § 2254(e)(2)**.[1]

## I.    Factual and Procedural Background

The petitioner, Brooklyn Becc Huber-Brown ("Huber-Brown"), is a convicted inmate incarcerated in the Louisiana Correctional Institute for Women in St. Gabriel, Louisiana.[2] On April 15, 2013, she was indicted by a Tangipahoa Parish Grand Jury for conspiracy to commit second degree murder and second degree murder.[3] She pleaded not guilty on June 20, 2013.[4]

The record reflects that, on April 9, 2008, Huber-Brown's husband, Christopher "Slater" Brown was found dead in his bed while holding his small dog, also deceased.[5] Brown suffered a

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 7, Indictment, 4/15/13.

[4]St. Rec. Vol. 1 of 7, Minute Entry, 6/20/13.

[5]The facts were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal. *State v. Brown*, No. 2015-0176, 2015 WL 5516123, at *1 (La. App. 1st Cir. Sep. 18, 2015); St. Rec. Vol. 7 of 7, 1st Cir. Opinion, 2015-KA-0176, pp. 2-3, 9/18/15.

fatal gunshot wound to his left back, a non-fatal gunshot wound to his right leg and right arm, and another nonfatal gunshot wound through the axilla into his right neck.

During their investigation of the murder, the Tangipahoa Parish Sheriff's Office determined that Huber-Brown and Aubrey Sikes had a sexual relationship before and after her marriage to the victim, Slater Brown. Before the affair and subsequent murder, Sikes became familiar with the Brown family after his older sister, Mindy, began dating Hunter Brown, who was Slater's brother. Their father, Bill Brown, became a father-figure to Sikes. Sikes moved in with the Browns during his senior year in high school when he was seventeen (17) years old.

Sikes soon began his sexual relationship with Huber-Brown, who was twenty-eight (28) years old and already involved and living with Slater in the Brown family home, although they were not yet married. Huber-Brown ultimately began having sexual encounters with Slater and Sikes together. Unbeknownst to Slater, however, Sikes and Huber-Brown also had separate sexual encounters when he was not present.

After graduating from high school, Sikes joined the Marine Corps and left for boot camp. While he was away, Huber-Brown sent him several intimate letters and in some, she complained about her marriage and the way Slater treated her. Eventually, Huber-Brown and Slater got married and moved into their own residence. However, she continued her sexual relationship with Sikes.

According to Sikes, the day before Slater's shooting, Huber-Brown told him that she missed him and that she was upset because in their last argument, Slater yelled at her for hours. She told Sikes that the argument was the final straw and she wanted Slater out of her life. Huber-Brown told Sikes that she wanted to be with him and when he asked her if she wanted Slater dead, she told him, "if that's what it takes."

2

Huber-Brown and Sikes made arrangements for him to go to her home the next night at about 10:30 p.m., after Slater would be asleep.  At the scheduled time, Sikes went to the home as planned, armed with a rifle, ammunition, and a knife.  When Sikes arrived, he saw Huber-Brown through the kitchen window and drove to the back of the trailer.  Huber-Brown opened the back door and Sikes, armed with the rifle, entered the trailer.  Sikes went to the bedroom and shot Slater (and the dog) while he was asleep.  Sikes eventually was arrested and separately tried and convicted of second degree murder.

Huber-Brown was tried before a jury on August 19 through 22, 2014, and found guilty as charged on both counts.[6]  At a September 10, 2014, hearing, the state trial court denied Huber-Brown's motion for new trial.[7]  The state trial court, thereafter, sentenced Huber-Brown to concurrently serve thirty (30) years in prison for conspiracy and life in prison without benefit or parole, probation, or suspension of sentence for second degree murder.[8]

On direct appeal, Huber-Brown's counsel asserted two errors: (1) she was denied due process when the court utilized "tale jurors" selected from people present in the courthouse, including employees, when the regular venire ran out; and (2) she was denied a fair trial when the court allowed Sikes's attorney to testify that his trial testimony was consistent with his prior statement to counsel years earlier.[9]  On September 18, 2015, the Louisiana First Circuit affirmed the convictions and sentences finding no merit in either claim and that Huber-Brown failed timely

---

[6]St. Rec. Vol. 1 of 7, Trial Minutes, 8/19/14; Trial Minutes, 8/20/14; Trial Minutes, 8/21/14; Trial Minutes, 8/22/14; Jury Verdict (count 1), 8/22/14; Jury Verdict (count 2), 8/22/14; Trial Transcript, 8/19/14; St. Rec. Vol. 2 of 7, Trial Transcript (continued), 8/19/14; Trial Transcript, 8/20/14; St. Rec. Vol. 3 of 7, Trial Transcript (continued), 3/20/14; Trial Transcript, 3/21/14; St. Rec. Vol. 4 of 7, Trial Transcript (continued), 3/21/14; Trial Transcript, 3/22/14.

[7]St. Rec. Vol. 1 of 7, Sentencing Minutes, 9/10/14; Motion for New Trial, 9/9/14; St. Rec. Vol. 4 of 7, Sentencing Transcript, p. 6, 9/10/14.

[8]St. Rec. Vol. 1 of 7, Sentencing Minutes, 9/10/14; Sentencing Transcript, 9/10/14.

[9]St. Rec. Vol. 7 of 7, Appeal Brief, 2015-KA-0176, 3/17/15.

3

to move for mistrial or contemporaneously object to the use of the tale jurors.[10]  Huber-Brown was allowed to file a *pro se* supplemental brief but did not do so.[11]

Huber-Brown's conviction was final under federal law thirty (30) days later, on Monday, October 19, 2015,[12] when she did not seek timely review in the Louisiana Supreme Court.  La. S. Ct. Rule X § 5; *Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008) ("[A] conviction becomes final when the time for seeking further direct review in the state court expires.") (quoting *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003)).

On March 7, 2016, Huber-Brown signed and submitted requests for copies of the prosecutor's records and other documents.[13]  In that pleading, Huber-Brown indicated that she was aware that no Louisiana Supreme Court writ application had been filed by her counsel after the direct appeal.[14]  The Court denied the motions on April 27, 2016.[15]

Three and one-half months later, on August 12, 2016, Huber-Brown signed and submitted to the Louisiana Supreme Court a writ application seeking untimely review of her direct appeal.[16]  On November 7, 2016, the Louisiana Supreme Court declined to consider the writ finding it untimely filed under Louisiana Supreme Court Rule X  Section 5.[17]

---

[10]*Brown*, 2015 WL 5516123, at *1; St. Rec. Vol. 7 of 7, 1st Cir. Opinion, 2015-KA-0176, 9/18/15.

[11]St. Rec. Vol. 7 of 7, Notice of Pro Se Filing, 2015-KA-0176, 3/20/15.

[12]The final day fell on Sunday, October 18, 2015, which caused the last day to fall on the next business day, Monday, October 19, 2015.  *See* La. Code Crim. P. art. 13; Fed. R. Civ. P. 6.

[13]St. Rec. Vol. 7 of 7, Motion for Public Records, 3/14/16 (dated 3/7/16); Motion for District Attorney's File, 3/14/16 (dated 3/7/16); Motion for Transcripts, 3/14/16 (dated 3/7/16).

[14]St. Rec. Vol. 7 of 7, Motion for Public Records, p. 2, 3/14/16 (dated 3/7/16).

[15]Rec. Doc. No. 1-4, p.11.

[16]St. Rec. Vol. 6 of 7, Copy of La. S. Ct. Writ Application, dated 8/12/16; La. S. Ct. Letter, 2016-KH-1587, 8/17/16.

[17]*State v. Brown*, 208 So.3d 893 (La. 2016); St. Rec. Vol. 6 of 7, La. S. Ct. Order, 2016-KH-1587, 11/7/16.

More than six months later, on May 24, 2017, Huber-Brown submitted to the state trial court an application for post-conviction relief asserting four grounds for relief:[18] (1) the evidence was insufficient to support the verdict; (2) she was denied a speedy trial; (3) she was denied due process when the trial was not continued after the jury venire list was exhausted; (4) she received ineffective assistance of counsel when counsel (a) failed to move for change of venue, (b) failed to impeach Sikes, (c) failed to impeach Vanessa Williams, (d) failed to produce defense witnesses, (e) failed to present evidence of a homosexual relationship between Slater and Sikes who had sex without her, (f) failed to assert the familial link between Sikes and his sister Mindy and their plan to implicate her to get him out of prison, and (g) failed to file a writ application to the Louisiana Supreme Court after the direct appeal.

After several status hearings and receiving a response from the State, the state trial court summarily denied the application at a November 28, 2017, hearing.[19]  On March 23, 2018, the Louisiana First Circuit denied Huber-Brown's related writ application for failure to submit required documentation under La. App. Rules 2-18.7 and 4-9.[20]  The Court allowed her to file a new complete writ application by May 15, 2018.  On July 23, 2018, the Louisiana First Circuit denied Huber-Brown's second writ application without stated reasons.[21]

---

[18]St. Rec. Vol. 6 of 7, Application for Post-Conviction Relief, 5/30/17 (dated 5/24/17).

[19]St. Rec. Vol. 6 of 7, Post-Conviction Hearing Transcript, 11/28/17; State's Opposition, 11/17/17.

[20]*State v. Brown*, No. 2017-1779, 2018 WL 1448128, at *1 (La. App. 1st Cir. Mar. 23, 2018); St. Rec. Vol. 6 of 7, 1st Cir. Order, 2017-KW-1779, 3/23/18.  The State failed to provide a copy of this writ application.  *See* Rec. Doc. No. 1-7, pp. 34-50.

[21]*State v. Huber-Brown*, No. 2018-0534, 2018 WL 3545352, at *1 (La. App. 1st Cir. Jul. 23, 2018); St. Rec. Vol. 6 of 7, 1st Cir. Order, 2018-KW-0534, 7/23/18.  The State failed to provide a copy of this writ application. *See* Rec. Doc. No. 1-7, pp. 53-55.

On August 12, 2019, the Louisiana Supreme Court denied Huber-Brown's related writ application finding that she failed to show ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984).[22]

## II.    Federal Petition

On September 30, 2019, the clerk of this Court filed Huber-Brown's federal petition for habeas corpus relief in which she asserted the following grounds for relief:[23] (1) the evidence was insufficient to convict her; (2) she was denied a speedy trial; (3) she was denied due process and a fair trial when the state trial court did not continue trial when an insufficient number of jurors were available; (4) the state trial court failed to change the venue on its own accord; and (5) she was denied effective assistance of counsel when counsel (a) failed to move for change of venue, (b) failed to impeach Sikes, (c) failed to impeach Vanessa Williams, (d) failed to produce defense witnesses, (e) failed to present evidence of a homosexual relationship between Slater and Sikes, (f) failed to emphasize the familial link between Mindy Brown and Sikes and their plan to implicate Huber-Brown to get him out of prison, and (g) failed to file a writ application to the Louisiana Supreme Court after the direct appeal.

The State filed a response in opposition asserting that Huber-Brown's federal petition should be dismissed as untimely filed and alternatively, her claims do not entitle her to federal habeas relief.[24]

---

[22]*State v. Huber-Brown*, 279 So.3d 356 (La. 2019); St. Rec. Vol. 6 of 7, La. S. Ct. Order, 2018-KH-1450, 8/12/19; La. S. Ct. Letter, 2018-KH-1450, 8/29/18.  The State failed to provide a copy of this writ application. *See* Rec. Doc. No. 1-3, pp. 5-21.

[23]Rec. Doc. No. 5.

[24]Rec. Doc. No. 11.

6

III.    **General Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[25] applies to Huber-Brown's petition, which is deemed filed in this Court under the mailbox rule on September 24, 2019.[26]  The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State asserts and the record shows that Huber-Brown's federal petition was not timely filed under the AEDPA.  For the following reasons, Huber-Brown's petition should be dismissed as time-barred.

IV.    **Statute of Limitations**

The AEDPA codified in 28 U.S.C. § 2244(d)(1)(A) requires a petitioner to bring his § 2254 claim within one year of the date the state court conviction became final.[27]  *Duncan v. Walker*, 533

---

[25]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes are effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[26]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court received and filed Huber-Brown's petition on September 30, 2019, when it was received.  Huber-Brown signed the petition on September 24, 2019, which is the earliest date appearing in the record on which she could have delivered her pleadings to prison officials for mailing to a federal court.  The fact that she paid the filing fee does not alter the application of the federal mailbox rule to her pro se petition.  *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002).

[27]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of-

7

U.S. 167, 176-80 (2001). As stated above, Huber-Brown's conviction was final under federal law on October 19, 2015, when she did not seek discretionary review of her direct appeal in the Louisiana Supreme Court. Pursuant to § 2244, Huber-Brown had one year from that date, or until October 19, 2016, to timely file a federal petition for habeas corpus relief, which she did not do. Thus, literal application of the statute would bar Huber-Brown's petition as of that date unless she is entitled to tolling as provided for under the AEDPA.

### A.    <u>Statutory Tolling</u>

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2). In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-08 & n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 468-69 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). For purposes of the AEDPA, a timeliness calculation in

---

A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

Louisiana requires the application of the prison mailbox rule to state court pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006). The Court has applied this rule in presenting the procedural history recited above.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999)) (finding that a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (finding that a state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds by Carey*, 536 U.S. at 214 (finding that a motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 687-88 (5th Cir. 2005).

In addition, efforts like those made by Huber-Brown to obtain copies of documents and transcripts do <u>not</u> constitute other collateral review for purposes of the AEDPA tolling calculation. *See Osborne v. Boone*, 176 F.3d 489, 1999 WL 203523 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcript copies is not "other collateral review" for tolling purposes); *Brown*

*v. Cain*, 112 F. Supp.2d 585, 587 (E.D. La. 2000), *aff'd*, 239 F.3d 365 (5th Cir. 2000); *Gerrets v. Futrell*, No. 01-3080, 2002 WL 63541 (E.D. La. Jan. 16, 2002) (Vance, J.); *Jones v. Johnson*, No. 01-CV-0115-G, 2001 WL 1006062, at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather support and transcripts); *Grayson v. Grayson*, 185 F. Supp.2d 747, 751-52 (E.D. Mich. Jan. 3, 2002) (delay in receipt of transcript not required to file the application, does not warrant equitable tolling).

In Huber-Brown's case, the AEDPA filing period began to run on October 20, 2015, the day after her conviction was final under federal law, and continued to run uninterrupted until October 19, 2016, when it expired.  The record reflects and Huber-Brown concedes that she had no properly filed state court application for post-conviction relief or other collateral review pending in the state courts during that time period.

The record also reflects that she filed untimely a writ application in the Louisiana Supreme Court on August 12, 2016.  Although she has proposed explanations for her untimeliness, such matters are discussed under equitable not statutory tolling.  As addressed here, under statutory considerations, that filing did not provide tolling or change the finality of her conviction.

As to finality, the time for seeking review had long passed.  Under Louisiana Supreme Court Rule X Section 5, an application seeking review of a judgment by the court of appeal shall be filed or postmarked within thirty (30) days of the issuance of the judgment under review or denial of a timely filed application for rehearing.  *Accord Wilson v. Cain*, 564 F.3d 702 (5th Cir. 2009).  As noted above, failure to proceed to that next step rendered Huber-Brown's conviction final at the end of that thirty-day period, or on Monday, October 19, 2015.  *Butler*, 533 F.3d at 317.  Her late filing, almost ten months later, does not alter the finality of her conviction.

Similarly, the untimely writ application also provided her with no statutory tolling under the AEDPA. Huber-Brown did not submit her Louisiana Supreme Court petition until August 12, 2016, which was almost ten months after the deadline under Louisiana Supreme Court Rule X Section 5. A writ application that fails to comply with Louisiana Supreme Court Rule X Section 5 is not "properly filed" because it is untimely and could not be "pending" as post-conviction review for purposes of the AEDPA's statute of limitations and tolling doctrines. *Butler*, 533 F.3d at 318-319; *Larry v. Dretke*, 361 F.3d 890, 897 (5th Cir. 2004) (failure to file state pleadings in the time-frame provided for under state law rendered the pleadings not properly filed); *Wardlaw v. Cain*, 541 F.3d 275, 279 (5th Cir. 2008) (same). The United States Supreme Court has made clear that "[w]hen a post-conviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." *Pace*, 544 U.S. at 414 (quoting *Carey*, 536 U.S. at 226). Huber-Brown's 2016 Louisiana Supreme Court writ application did not interrupt or toll the AEDPA filing period, which expired on October 19, 2016.

In addition, Huber-Brown did not submit a state court post-conviction application until May 24, 2017, which was more than seven months after the AEDPA filing period expired. She is not entitled to renewal of the filing period or other tolling benefits for pleadings filed after the AEDPA one-year limitations period has already expired. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) (a filing made after the expiration of the AEDPA one-year filing period does not renew or extend the AEDPA filing period or provide a petitioner any tolling benefits); *Higginbotham v. King*, 592 F. App'x 313, 314 (5th Cir. 2015) (same).

Huber-Brown's federal petition deemed filed under the mailbox rule on September 24, 2019, was filed more than two years and eleven months after the AEDPA filing period expired on

October 19, 2016. Her federal petition was not timely filed and should be dismissed with prejudice for that reason.

### B.    No Equitable Tolling

The post-AEDPA jurisprudence also provides for equitable tolling of the AEDPA limitations period where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 419; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). However, equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary circumstance outside of his control from asserting his rights. *Pace*, 544 U.S. at 418-19; *see Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002); *see Holland v. Florida*, 560 U.S. 631, 652-53 (2010) (finding that equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (finding that equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (finding that tolling was warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (quotation omitted) ("A garden variety claim of excusable neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715

(finding that tolling is not justified during petitioner's seventeen-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (finding that State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended the deadline to file habeas corpus petition beyond expiration of AEDPA grace period). Huber-Brown has not presented, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling to the § 2244(d) calculation.

Huber-Brown's equity arguments do not speak directly to equitable tolling of the AEDPA limitations period. She instead seeks to excuse or explain certain untimely state court filings. However, the purpose of the federal equitable tolling doctrine relates to the suspension of the federal limitations period under the AEDPA not state law filing deadlines for state court pleadings. *See Pace*, 544 U.S. at 419; *Davis*, 158 F.3d at 811. Nevertheless, even if the Court is to address her pleas to excuse her tardiness in state court, to the extent it led to her tardiness in federal court, she has not established a basis for the granting of the extraordinary remedy of equitable tolling of the AEDPA one-year filing period.

Huber-Brown asserts two reasons to excuse her general untimeliness in the state courts. First, she claims that she was not immediately aware that her counsel failed to file a Louisiana Supreme Court writ application after direct appeal. Second, she claims that the unprecedented flooding that occurred on August 16, 2016, impacted the library at the prison where she is housed and resulted in the delay of matters then-pending in the state courts.

While both contentions may be unusual or even extraordinary, Huber-Brown's claim for equitable tolling fails on her lack of reasonable diligence in protecting her federal habeas rights.

13

"What a petitioner did both before and after the extraordinary circumstances that prevented him from timely filing may indicate whether he was diligent overall." *Jackson v. Davis*, 933 F.3d 408, 411 (5th Cir. 2019). In this case, Huber-Brown did not act reasonably either after the discovery of her counsel's alleged failing or before and after the 2016 flooding to warrant equitable tolling. *See Id.* at 410.

The Fifth Circuit recognizes that "equitable tolling" by its definition suspends the limitations period when, "despite diligent efforts," the petitioner "did not discover the injury until *after the limitations* period had expired." (emphasis in original) *Umana v. Davis*, 791 F. App'x 441 (5th Cir. 2019) (quoting *Black's Law Dictionary* (11th ed. 2019)). Here, the record is quite clear that Huber-Brown was aware of the filing deadlines for federal habeas and state post-conviction relief long <u>before</u> the deadlines for filing passed.

In her state court pleadings, Huber-Brown indicated that she knew the following facts at some point prior to filing her production of document motions in the state trial court on March 7, 2016:[28] (1) no Louisiana Supreme Court writ application had been filed by her counsel after direct appeal; (2) her conviction became final under state law after her direct appeal was decided on September 18, 2015; and (3) legal delays for the filing of post-conviction relief "with the state and federal courts" began to run when her conviction became final. Huber-Brown, therefore, had knowledge of these critical points long <u>before</u> (not after) the state post-conviction and federal habeas limitations periods expired. Despite this knowledge, Huber-Brown failed to reasonably protect her rights or timely file for that relief.

---

[28]St. Rec. Vol. 7 of 7, Motion for Public Records, p. 2, 3/14/16 (dated 3/7/16).

For example, in her March 7, 2016, state court motions, Huber-Brown indicated her intention to seek state court post-conviction relief before her time to do so expired, knowing that the time to do so had already begun to run almost six months earlier. Despite her knowledge of deadlines and delays, she waited more than five months after that to knowingly file a very untimely Louisiana Supreme Court writ application on August 12, 2016. She also waited more than nine additional months to actually file a state court application for post-conviction relief on May 24, 2017. Despite what she knew, Huber-Brown waited to begin preparing that post-conviction application until <u>after</u> she received the Louisiana Supreme Court's November 7, 2016, denial of her untimely writ application.[29] These compounded delays despite her knowledge of the critical dates do not way in favor of finding diligence.

In addition, and contrary to her assertions, the flooding that occurred on August 16, 2016, could not have delayed or otherwise impacted her filing of the untimely Louisiana Supreme Court writ application filed four days earlier (August 12, 2016). Huber-Brown also has not explained the impact the extended but temporary flooding had on the passing of time from some point before March 7, 2016 until the flooding occurred or from after the flood through May 24, 2017, when she finally filed her state court post-conviction application. These extended delays could not have been the result of the temporary impact of the flooding that occurred on August 16, 2016, which was months after she knew the state and federal deadlines already were running against her.

Most importantly, Huber-Brown has not addressed how the flood's temporary impact prevented her from timely filing her federal petition. By March of 2016, Huber-Brown knew that

---

[29]Rec. Doc. No. 1, p.13.

the federal limitations period had begun to run,[30] and she did not seek federal habeas relief until three and one-half years later on September 24, 2019.  In fact, in her state post-conviction application filed May 24, 2017, Huber-Brown asserted that her counsel "caused this petitioner to miss the AEDPA deadline for filling (sic) a writ of habeas corpus [28 U.S.C. § 2254] into the federal court. . ."[31]  She knew when preparing that document that she already had missed the AEDPA deadline.  Neither the 2016 flooding nor her perpetuated delays warrant equitable tolling of the AEDPA limitations period.

With respect to her counsel's role, Huber-Brown has not provided any support for her claim that her counsel actively misled her about the filing of a Louisiana Supreme Court writ application or this federal petition, filed four years after her direct appeal.  Huber-Brown has presented nothing but her self-serving statements unsupported by anything in the record or any other documentation to establish fault assignable to her counsel.  The claims are mere accusations that her counsel lied and/or were paid to file pleadings that were not filed.  There is nothing in Huber-Brown's vast collection of supporting documents to establish as she asserts that she actually communicated with counsel, paid counsel to file the writ application, or otherwise was actively misled to believe that a timely writ application was filed in 2015.  While misdeeds of counsel may well lead to equitable relief, Huber-Brown's unsupported claims are insufficient to meet her burden to prove she was actively misled and entitled to equitable tolling.  *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000) (the habeas petitioner bears the burden of proof to show he is entitled to equitable tolling).

---

[30]St. Rec. Vol. 7 of 7, Motion for Public Records, p. 2, 3/14/16 (dated 3/7/16).

[31]St. Rec. Vol. 6 of 7, Application for Post-Conviction Relief, p. 11, 5/30/17 (dated 5/24/17).

Furthermore, assuming her assertions could be true, the brief delay of a few months that could be attributed to counsel's error in late 2015 until her discovery of the error before March 7, 2016, does not excuse or account for the almost four year delay from discovery until she filed for federal habeas relief.  As noted above, her pleadings indicated that some time before her March 7, 2016, state court motions, she knew that no writ application had been filed by her counsel and her federal habeas clock was running.  These motions were filed less than six months after the Louisiana First Circuit issued the direct appeal opinion on September 18, 2015.  Despite this, Huber-Brown sought no state court relief for months and no federal habeas relief for years.  Instead, she waited at least five months to file the untimely Louisiana Supreme Court writ application on August 12, 2016 and waited another nine months after that to file the post-conviction application on May 24, 2017.  These added periods of delay cannot be attributed to any alleged malfeasance by her counsel in the Fall of 2015 (through early 2016).  Huber-Brown's delay in filing for state court post-conviction and federal habeas relief does not indicate due diligence or grounds for equitable tolling.  *North v. Davis*, 800 F. App'x 211 (5th Cir. 2020) (petitioner's eleven (11) month delay in seeking state post-conviction relief weighs against a finding of diligence); *Stroman v. Thaler*, 603 F.3d 299, 302 (5th Cir. 2010) (affirming the denial of equitable tolling where petitioner waited seven months to file state post-conviction application).

For the foregoing reasons, Huber-Brown has not established diligence in her efforts to preserve her rights or to timely file a federal habeas petition.  She is not entitled to equitable tolling.

C.    **No Other Excuse or Exception to Time Bar**

Huber-Brown has asserted no other valid excuse or exception to avoid the expiration of the one-year AEDPA limitations period in this case, and her petition must be dismissed as untimely. She has not asserted nor provided a credible showing of her actual, or factual, innocence based on

newly discovered evidence in any way to excuse this untimely filed federal habeas petition. *McQuiggin v. Perkins*, 569 U.S. 383 (2013); *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *see also House v. Bell*, 547 U.S. 518, 537 (2006) (quoting *Schlup*, 513 U.S. at 324). No such claim or high-level of proof has been offered by Huber-Brown to this Court, nor has any such claim been established or exhausted in the state courts.

In addition, the fact that Huber-Brown has asserted ineffective assistance of trial counsel claims does not provide excuse for her untimely federal filing. The United States Supreme Court's holdings in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), and their progeny, simply do <u>not</u> provide a basis for review of Huber-Brown's untimely filed federal petition.

In *Martinez*, the Court held that a state court imposed "'<u>procedural default</u> will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at <u>trial</u> if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'" *Trevino*, 569 U.S. at 417 (quoting *Martinez*, 566 U.S. at 17) (emphasis added). In this case, however, the bar at issue in this federal court arises from <u>Huber-Brown's</u> failure to meet the <u>federal</u> limitations deadline under the AEDPA. The *Martinez* and *Trevino* decisions do <u>not</u> address or provide an excuse for the untimely filing of a federal habeas petition. *See Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014) ("Thus, we also hold that the reasoning of the *Martinez* rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); *Smith v. Rogers*, No. 14-0482, 2014 WL 2972884, at * 1 (W.D. La. Jul. 2, 2014); *Falls v. Cain*, No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. Jun. 13, 2014) (Order adopting Report). As already discussed, these cases also do not constitute new rules of constitutional law made retroactive on collateral review to start a new one-year filing period under the AEDPA. *See In re*

*Paredes*, 587 F. App'x at 813; *Adams v. Thaler*, 679 F.3d 312, 322 n.6 (5th Cir. 2012). Thus, neither *Martinez* nor *Trevino* excuse the untimely filing of Huber-Brown's federal petition.

Huber-Brown's federal petition deemed filed on September 24, 2019, was not timely filed within the one-year AEDPA statute of limitations period which expired on October 19, 2016. There is no equitable tolling or exception applicable to her untimely filing, and the petition should be dismissed with prejudice as time-barred.

## V.    <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Huber-Brown's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[32]

New Orleans, Louisiana, this <u>27th</u> day of May, 2020.

_____
    **KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[32]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.